### A. BADER & CO. v. UNITED STATES.

(Circuit Court, S. D. New York.    June 27, 1902.)

1. CUSTOMS DUTIES—FINDINGS OF BOARD OF GENERAL APPRAISERS.

> The board of general appraisers was established to determine controverted questions of fact arising in the administration of the customs laws, and its decision on such questions should not be overruled unless clearly against the weight of evidence.

2. SAME—CLASSIFICATION—JEWELRY.

> Findings of the board of general appraisers that hat pins, hair pins, breast pins, buckles, and other similar ornaments adapted for personal adornment, and composed of base metal, in imitation of precious metals and otherwise, some being set with imitation precious stones, were "articles commonly known as jewelry," and as such dutiable under paragraph 434 of the tariff act of 1897, affirmed.

3. SAME—MILLINERY TRIMMINGS.

> Black hat ornaments, composed of metal and black glass, made to resemble jet, are not articles commonly known as jewelry, and included in paragraph 434 of the tariff act of 1897, but are millinery trimmings, dutiable either under paragraph 112, as manufactures of glass, or under paragraph 193, as articles made wholly or in part of metal, not specially provided for, depending upon whether or not the glass is the component material of chief value.

Appeal by the Importers from a Decision of the Board of United States General Appraisers.

¶ 1. See Customs Duties, vol. 15, Cent. Dig. § 205.

W. Wickham Smith, for importers.
Charles D. Baker, Asst. U. S. Atty.

COXE, Circuit Judge. The importations in question were assessed for duty under paragraph 434 of the act of 1897, which is as follows:

"Articles commonly known as jewelry, and parts thereof, finished or unfinished, not specially provided for in this act, including precious stones set, pearls set or strung, and cameos in frames, sixty per centum ad valorem."

The importers insist that the importations should have been classified either under paragraph 112 or paragraph 193 of the same act which provide for an ad valorem duty of 45 per centum. Paragraph 112 relates to "all glass or manufactures of glass or paste, or of which glass or paste is the component material of chief value." Paragraph 193 relates to "articles or wares not specially provided for in this act, composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum or other metal, and whether partly or wholly manufactured." The imported articles are very carefully described in the opinion of the board. They consist generally of hat pins, hair pins, breast pints, buckles and other similar ornaments adapted for personal adornment and composed of base metal in imitation of precious metals, and otherwise; some of them being set with imitation precious stones and others with black glass made to resemble jet. The board finds as matter of fact that the goods in question belong to a class of articles made and sold by manufacturers of jewelry or jewelers, and that they were "commonly known as jewelry" in the United States on July 24, 1897, and prior thereto. As to a large number of the importations this finding seems to be justified by the proof and the court is unable to find sufficient reason for disturbing it. There is a marked difference of opinion among the witnesses as to whether or not the majority of the importations were commonly known as jewelry. The evidence offered to establish the affirmative of this proposition is sufficient to sustain the finding referred to. The board of general appraisers was established to determine such controversies and its decision should not be overruled unless clearly against the weight of evidence.

The court is unable, however, to find sufficient proof to sustain the finding of the board as to the so-called "black goods" which appear to be described in the paragraphs numbered 9 and 10 of the decision. The testimony as to these goods seems to be practically undisputed that they are not jewelry and were not commonly known as jewelry. George W. Mindil, a witness called for the government, after testifying that he was familiar with the importations in question, says:

"With the exception of the black goods here, which are undoubtedly millinery trimmings, the rest are cheap jewelry, mock jewelry. * * * They are imitations of the regular solid goods set with artificial stones in imitation of the finer goods. I would exempt from that the plain steel buckle without any ornamentation whatever. * * * Black hat ornaments composed of metal and black glass, imitation jet, are not, according to my understanding of the term, articles of jewelry."

The counsel who represented the government before the board seems to have been impressed with the idea that the "black goods"

could not be successfully classed among the articles known as jewelry, for he asked the witness William Stone who was called for the government the following question: "Will you please examine all these exhibits but the black one, and tell us, if you know, what class of merchandise they belong to?" The witness replied: "I should say they are millinery ornaments." In short, Mr. Stone was of the opinion that none of the articles could be classed as jewelry, and as to the "black goods" the case was so clear against the government's contention that the counsel representing the collector did not deem it prudent even to ask the question. The next witness called for the government was Henry Corn, who testified as follows: "Question. I call your attention to these black articles in imitation of jet; are you familiar with these? Answer. No, sir, we don't handle any of them; mere millinery ornaments." Henry W. Mayer, another government witness, was asked his opinion of the importation excepting the "black goods." Even Mr. Bigney, who was the most positive witness called by the government, hesitated when confronted with the "black goods," and was only able to include them in the class commonly known as jewelry because of their similarity to other articles which he regarded as jewelry. In fact, the court has searched the record in vain for any competent testimony sustaining the collector's classification in this particular.

As this cause was submitted without briefs or index of the testimony and with only two of the exhibits forwarded with the record, it is not an easy task without further data to formulate a judgment which accurately states the conclusion of the court. It is thought, however, that counsel will have no difficulty in agreeing upon an order reversing the decision of the board as to the "black goods" and affirming it as to the other importations.